IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENWOOD DIVISION

Patrick Brown,               )

           )

          Plaintiff,    )

           )

      vs.            )

           )

Wayne Findley, Chad Cox,    )

Phillip Anderson, and Sammy Hill   )

           )

         Defendants.  )

_____)

Civil Action No. 6:09-2610-HFF-KFM

**REPORT OF MAGISTRATE JUDGE**

        This matter is before the court on the defendants' motion for summary judgment (doc. 58). The plaintiff, who is a state prisoner[1] proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. The plaintiff claims that employees at the Greenwood County Sheriff's Office ("GCSO") and the Greenwood County Detention Center ("GCDC") in Greenwood County, South Carolina, used excessive force against him and then denied him medical treatment. At the time of the alleged incident, the defendants (Sergeant) Wayne Findley, (Investigator) Chad Cox, and (Deputy) Sammie Hill were employed at the GCSO as law enforcement officers, while Defendant (Major) Phillip Anderson was employed at the GCDC.

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

        On May 17, 2010, the defendants filed a motion for summary judgment. By order filed May 18, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975),

_____

[1]The plaintiff is currently incarcerated at Lieber Correctional Institution.

the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response in opposition on June 28, 2010.

## **FACTS PRESENTED**

The plaintiff alleges in his complaint as follows: On June 30, 2009, he was being chased on foot by Sergeant Findley, and he ran into a wooded area. He eventually stopped running and placed his hands in the air. Despite his attempt to surrender, Sergeant Findley used a taser on him, with the prongs striking him in the back. He fell to the ground, and a "broken off sticker briar" became lodged in his eye. He was then shocked again with a second cycle of voltage from the taser. Other officers then came upon the scene, including Investigator Cox and Deputy Hall, and he was transported to the GCDC. The plaintiff claims that he was denied medical treatment after arriving at the GCDC, despite his complaints about his eye and back pain. In a letter to the court filed January 15, 2010, construed as an amended complaint (doc. 34), he alleges that he remains injured and has not seen a doctor, though he admits that he was seen by "the EMS people" upon his arrival at the GCDC. He seeks $25,000.00 in damages.

In support of their motion for summary judgment, the defendants submit the affidavits of each of the defendants, an affidavit from GCSO Deputy Courtney Smith, and a Medical History and Assessment of the plaintiff conducted by the GCDC. Collectively, the affidavits show that on June 30, 2009, Deputy Smith, Sergeant Findley, and Deputy Cox were searching for a burglary suspect in a wooded area in the nighttime. Deputy Smith heard the suspect running through the woods and ordered him to stop. The suspect continued to run, and Deputy Smith ran after him, eventually catching up to him. Smith then testifies that he located the subject, later identified as the plaintiff, and ordered him to get down on the ground and show his hands. Smith testifies as follows:

> The subject was sitting in a crouched position with both hands tucked away and out of view....I commanded him to show me his hands and warned that I would use my taser if he refused. He refused to show me his hands so I pulled out my X26 taser... and deployed it. After the first cycle, I again ordered the subject to show me his hands. He again refused to comply with my order so I tased him again for a second cycle. After the second cycle, the subject presented his hands, and he was placed in handcuffs and arrested by Deputy Whitfield Brooks.

(Smith aff. ¶¶11-13). Attached as an exhibit to Deputy Smith's affidavit is his Taser Use Report, on which Smith indicates that the taser prongs struck the plaintiff on the front of his body and that EMS checked the taser prong location points for injury when they examined the plaintiff. Findley and Cox testify in their affidavits that they came onto the scene after the plaintiff was already in handcuffs and while the taser prongs were being removed from the plaintiff's body. Deputy Hill testifies that he was off duty that evening and was not involved in the apprehension of the suspect whatsoever. Major Anderson testifies that he was likewise not present when the plaintiff was arrested, nor was he present when the plaintiff arrived at the GCDC later that evening. He states that the plaintiff's file at the GCDC shows he was seen by EMS upon his arrival at the GCDC with no reported injuries. He further testifies that the plaintiff had not complained of his alleged injuries while at the GCDC and that the plaintiff's inmate file contains no "sick call" forms requesting medical attention. His file, however, does contain a Medical History and Assessment form dated August 1, 2009, approximately one month after his arrest and arrival at the GCDC. The form (doc. 58-8), which bears the signature of the plaintiff, indicates that the plaintiff reported having no injuries for the previous three months.

In his response in opposition to summary judgment (doc. 63), the plaintiff appears to assert that he was actually tasered four or five times and maintains that Sergeant Findley was responsible for some of those, along with Deputy Smith. Otherwise, the plaintiff does not dispute the respective testimony of the defendants and Deputy Smith

3

regarding their involvement, or lack of involvement, in the incident. In addition, the plaintiff does not dispute Major Anderson's testimony that the plaintiff failed to report any injuries or complete sick call forms; instead, the plaintiff responds that it costs money to see a doctor and that he will see a doctor at the emergency room when he is released in 2011.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific,

4

material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

### *Dismissal for Failure to Plead Personal Allegations*

The plaintiff has failed to allege how each named defendant, with the exception of Wayne Findley, acted individually to apply excessive force or to deliberately deny his serious medical needs. A plaintiff must affirmatively show that a defendant acted personally in the deprivation of his constitutional rights. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). As the plaintiff has failed to meet this minimum pleading requirement, defendants Chad Cox, Phillip Anderson, and Sammie Hill should be dismissed from this action.

### *Excessive Force*

The Fourth Amendment guarantees citizens the right to be free from unreasonable seizures. Accordingly, whether a law enforcement officer has used excessive force in making an arrest is to be determined under the Fourth Amendment's standard of objective reasonableness. *Graham v. Connor*, 490 U.S. 386 (1989). "The 'reasonableness'

of a particular use of force must be judged from the perspective of a reasonable officer on the scene," and in consideration of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight" *Id.* at 396.

The use of a taser under some circumstances could certainly be considered excessive, as seen in *Cavanaugh v. Woods Cross City,* No. 10-4017, 2010 WL 4332289 (10th Cir. Nov. 3, 2010), where the Tenth Circuit Court of Appeals recently concluded that the use of an X26 taser "against a non-violent misdemeanant who appeared to pose no threat and who was given no warning" was constitutionally excessive. However, such circumstances are not present here. It is undisputed that the officers chased the plaintiff through the woods at night following a reported nighttime burglary. The officers did not know whether the plaintiff was armed. As officers closed in, the plaintiff was ordered to stop running and to show that his hands were empty, and he was tasered until his hands were seen. These circumstances justified the use of a non-lethal taser to apprehend and control the plaintiff at the end of this dangerous pursuit. As recognized by the Supreme Court, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396.

A factual dispute arises as to whether the plaintiff was tasered in the back as he contends, or in the chest as Deputy Smith testifies. However, this dispute does not create a genuine issue of material fact, as regardless of where the taser prongs struck his body, it is undisputed that the plaintiff was not yet in the custody and control of the arresting officers when he was tasered. Under the circumstances, the use of a taser to subdue the

plaintiff was appropriate and reasonable, and where the taser prongs contacted his body is immaterial for this determination.

**Deliberate Indifference to Medical Needs**

To the extent the plaintiff asserts a claim for deliberate indifference to a serious medical need, such claim also fails. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). "The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee." *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) (citing *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988)). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a

lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

The plaintiff complains here of back and eye pain that arose from his arrest; however, he has submitted absolutely no evidence to substantiate that he was injured at all. To the contrary, he admits that he was checked over by EMS personnel following his arrest, an examination in which the paramedics determined that "everything was fine" (doc. 58-3). Further, he does not dispute Major Anderson's testimony that his inmate file contains no sick call requests, indicating that he failed to ask for medical treatment while at the GCDC for any reason. Indeed, the undisputed Medical History and Assessment form, signed by the plaintiff one month after his arrest and arrival at the GCDC, indicates that he reported no injuries or pain for the preceding three months. His minimal injuries, if any, coupled with the records showing that the plaintiff had the ability and opportunity to request medical attention and treatment but failed to do so, belie his claims of deliberate medical indifference. Accordingly, this claim fails.

Regarding Major Anderson, as noted above, the plaintiff has failed to allege that he personally acted or failed to act in violation of his constitutional rights in this regard. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("Having failed to allege any

8

personal connection between [the defendant] and any denial of [the plaintiff's] constitutional rights, the action against him must fail."). Furthermore, to the extent the plaintiff seeks to hold Major Anderson liable in his supervisory capacity, the doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge*, 550 F.2d at 928-29. The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.). The plaintiff has failed to make such a showing here. *See Miltier*, 896 F.2d at 854 (to bring claim alleging denial of medical treatment against non-medical supervisory prison personnel, inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct). Based upon the foregoing, any medical indifference claim against Major Anderson fails.

### Qualified Immunity

Lastly, the defendants argue they are entitled to qualified immunity as their conduct did not violate any clearly-established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified

immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). The plaintiff's conclusory allegations fail to demonstrate that the defendants violated his constitutional rights. Therefore, the defendants are entitled to qualified immunity.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 58) be granted.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

December 13, 2010

Greenville, South Carolina

10